IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SETH TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:16-CV-00635-NJR-DGW |
| | ) |
| UNITED STATES FOREST SERVICE, an administrative agency of the United States Department of Agriculture, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Seth Turner initiated this action for declaratory and injunctive relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq*. (Doc. 20).[1] Turner asserts the United States Forest Service ("Defendant") failed to timely and fully respond to his FOIA request and failed to make a reasonable effort to search for certain records he requested as part of his efforts to protect threatened and endangered bat species in Illinois (*Id*.). Now before the Court are the parties' cross-motions for summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Northern long-eared bats and Indiana bats are respectively listed as threatened and endangered species under the Endangered Species Act of 1973, 16 U.S.C.A. § 1531 *et seq*. ("ESA").[2] The ESA prohibits the taking of threatened or endangered species through both

---

[1] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States."

[2] *Northern Long-Eared Bat*, U.S. FISH & WILDLIFE SERVICE (April 2015), https://www.fws.gov/midwest/endangered/mammals/nleb/nlebFactSheet.html; *Indiana Bat*, U.S. FISH &

direct harm and habitat destruction.[3] In 1982, Congress amended the ESA to authorize the United States Fish and Wildlife Service ("USFWS") to issue permits for projects that result in the "incidental" taking of listed species. *Id.* The 1982 amendment requires permit applicants to "design, implement, and secure funding for a conservation plan that minimizes and mitigates harm to the impacted species during the proposed project." *Id.* This plan is commonly referred to as a "habitat conservation plan." *Id.* After the applicant submits a habitat conservation plan, the USFWS publishes all of the relevant documents in the Federal Register to facilitate public comments on the plan.[4] The USFWS then addresses the public comments and determines whether to grant or deny the application. *Id.*

In 2014, Pioneer LLC ("Pioneer") applied for a permit under the ESA to operate wind turbines that inadvertently result in bat mortalities due to collisions with the machines' spinning blades. 79 Fed. Reg. 45841. The habitat conservation plan associated with the permit included the gating of Griffith Cave in Shawnee National Forest ("SNF"), which is a hibernacula[5] for northern long-eared bats and Indiana bats. *See id.*

On December 2, 2015, Turner submitted a FOIA request to Defendant, requesting "all records pertaining to the gating of Griffith Cave, as well as any alternatives that may have been suggested" (Doc. 20, Ex. 1). Defendant immediately sent Turner two automatic responses acknowledging its receipt of Turner's request (Doc. 20, Exs. 2 & 3). Turner did not receive any other correspondence from Defendant as of June 13, 2016, which is the date he

---

WILDLIFE SERVICE (March 2018), https://www.fws.gov/midwest/endangered/mammals/inba/index.html.
[3] *Endangered Species*, U.S. FISH & WILDLIFE SERVICE (Feb. 2018),
https://www.fws.gov/midwest/endangered/permits/hcp/index.html.
[4] *Endangered Species Permits*, U.S. FISH & WILDLIFE SERVICE (Feb. 2016),
https://www.fws.gov/midwest/endangered/permits/hcp/hcp_develop.html.
[5] "A bat hibernaculum is a site where bats hibernate over the winter. These sites are most often caves or abandoned mines." *Bat Hibernaculum*, WISCONSIN DEPARTMENT OF NATURAL RESOURCES (Sept. 24, 2015), https://dnr.wi.gov/topic/EndangeredResources/OtherElements.asp?mode=detail&SpecCode=OBATCOLONY.

initiated this action (Doc. 1).

In his original Complaint, Turner asserted that Defendant's failure to respond to his FOIA request prevented him from meaningfully commenting on the plan to gate Griffith Cave (Doc. 1). He requested the following relief: a declaration that Defendant's failure to respond or produce the documents is unlawful under the FOIA; an injunction requiring Defendant to respond to his FOIA request; the Court's retention of jurisdiction over the action "to ensure the timely processing of Plaintiff's FOIA request and that no responsive agency records are wrongfully withheld;" and an award of costs, expenses, and reasonable attorney's fees (*Id.*).

On July 1, 2016, Forest Supervisor Brendan Cain from SNF responded to Turner's FOIA request:

> In response to your request, we conducted a search of our natural resources program management records for responsive electronic and hard copy records in the following physical office locations: the District Ranger's Office, Vienna; the Supervisor's Office, Harrisburg; and the Jonesboro Work Center, Jonesboro. Within those offices we searched every location where a reasonably knowledgeable professional could expect to find records pertaining to your request. No records were found responsive to your request. . .[W]e would like to explain that no records were found because the Shawnee National Forest was not party to the planning for gating of Griffith Cave. To our knowledge, the public agencies involved in this undertaking were the Illinois Department of Natural Resources and the U.S. Fish and Wildlife Service.

(Doc. 20, Ex. 4).

On July 15, 2016, the Regional Forester for the Eastern Region, Kathleen Atkinson, wrote to Turner to confirm that "[t]he Shawnee National Forest conducted a reasonable search and did not locate any records responsive to your request" (Doc. 20, Ex. 5). A few months later, on October 4, 2016, Mr. Cain wrote to Turner, informing him that Defendant

conducted additional searches and identified 529 pages of records responsive to his request (Doc. 20, Ex. 6). Mr. Cain enclosed those records with his letter (*Id.*). Mr. Cain followed-up with Turner on November 10, 2016 stating that, due to a clerical error, the October 2016 response did not contain all responsive records (Doc. 20, Ex. 7). Mr. Cain enclosed an additional 433 pages and wrote that "additional searches for archived digital records are currently in progress and you will be notified when all search efforts have been concluded" (*Id.*). On December 12, 2016, Mr. Cain sent Turner fifteen email messages purportedly responsive to the FOIA request (Doc. 20, Ex. 8).

Turner filed a Second Amended Complaint in this case on June 13, 2017 (Doc. 20). He asserts Defendant failed to make any effort to respond to his FOIA request until approximately six months after it received his submission; Defendant's initial response from July 2016 was in bad faith or, alternatively, "without any real effort[;]" Defendant's subsequent responses were also deficient; and Defendant constructively and unlawfully denied Turner's FOIA request by failing to fully respond (Doc. 20). Turner prayed for the same relief as he did in his initial Complaint (*Id.*).

Defendant now moves the Court for summary judgment, asserting its response to Turner's FOIA request was adequate as a matter of law (Doc. 33). Turner filed a cross motion for summary judgment (Doc. 35) and a motion to strike declarations Defendant offered in support of its motions for summary judgment (Doc. 48). Defendant similarly moves the Court to strike portions of an affidavit Turner filed in support of his motion (Doc. 46). Finally, Turner requests that in the event his motion for summary judgment is

denied, the Court grant him leave to engage in discovery.[6]

## SUMMARY JUDGMENT STANDARD

Cross motions for summary judgment are treated separately under the standards applicable to each. *See McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008). Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).

The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The Seventh Circuit has stated that summary

---

[6] Pursuant to Local Rule 26.1, FOIA cases are exempted from initial disclosures, and discovery is permissible only after the defendant files a motion for summary judgment.

judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

Both parties raise evidentiary objections to, and move the Court to strike portions of, exhibits offered in support of the motions for summary judgment. The resolution of those disputes will materially affect the disposition of this matter so the Court turns to those issues first.

### A. Matthew Lechner's Declarations

Defendant's Motion for Summary Judgment rests on declarations from Matthew Lechner, its Natural Resources Manager and SNF's FOIA Coordinator (Doc. 33, Ex. 9). Defendant attached a declaration from Mr. Lechner to its motion for summary judgment, which identified SNF staff members who conducted searches in response to Turner's FOIA request, detailed the dates and nature of those searches, and set forth the terms used in electronic searches for records (*Id.*). Mr. Lechner intended to execute the declaration in accordance with 28 U.S.C. § 1746, which permits a person to submit a declaration under the penalty of perjury in lieu of an affidavit (*Id.*). The declaration, however, failed to state that Mr. Lechner's statements were true and correct or that he executed the declaration under the penalties of perjury, as required under the statute (*Id.*). Turner filed a motion to strike Mr. Lechner's declaration based on these errors (Doc. 36). Defendant then moved to withdraw Mr. Lechner's declaration (Doc. 37) and filed a motion in opposition to Turner's motion to strike (Doc. 38).

Defendant's motion in opposition sets forth a revised Declaration of Matthew Lechner, which conforms to the requirements of 28 U.S.C. § 1746 (Doc. 38, Ex. 1). According to that declaration, on or about September 2016, SNF identified staff members who may have been in possession of records responsive to Turner's FOIA request (*Id.*). Those staff members are: Rodney McClanahan, a retired Wildlife Biologist who led the bat program at SNF until March 31, 2015; Paul Widowski, Mr. McClanahan's successor; Richard Blume-Weaver, the Planning and Resources Staff Officer, an advisor to the bat program, and FOIA Coordinator; Matthew Lechner, the Program Manager for SNF's Threatened and Endangered Species Program; Tim Pohlman, the District Ranger for SNF; Leonard Pitcher, Supervisory Natural Resources Specialist; Chad Deaton, a wildlife biologist; Bryan King, a wildlife technician who worked with the bat program; and Aaron Miller, a forestry technician and Mr. King's successor (*Id.*).

Mr. Lechner states that in September 2016, Mr. Widowski searched for responsive documents within Mr. McClanahan's hard copy and electronic files and within Mr. Widowski's own file cabinets, desk files, and electronic files (*Id.*). Mr. Widowski specifically searched through electronic files entitled "2600 Wildlife Management" and "1900 Planning," which held bat and cave related records (*Id.*). He also conducted electronic searches using the terms "Griffith" and "Gating" (*Id.*).

In September 2016, Mr. Lechner searched through Mr. Blume-Weaver's records (*Id.*). He also searched his own emails, desk files, electronic files, and the central file room using the terms "Griffith Cave" and "Griffith" (*Id.*). Around the same time, Mr. Pohlman conducted a search of his electronic files, hard copy files, desk files, and email account using the terms "Griffith Cave" and "Cave" (*Id.*); Mr. Pitcher conducted a search within his

electronic files and emails using "Griffith" and "Griffith Cave" (*Id.*); Mr. Deaton searched his electronic files, emails, and desk files using electronic search terms "Griffith," "Griffith Cave," and "Cave Gating" (*Id.*); and Mr. King searched his electronic files, desk files, and email account, using electronic search terms "Griffith Cave," "Bat Gates," "Cave Closure," and "Gating of Griffith Cave" (*Id.*).

In August 2016, Mr. Miller searched within the SNF Threatened and Endangered Species Program files and within his own files at his desk (*Id.*). Mr. Miller was "very new to the position" and did not conduct an email search because he knew that he had not received or sent emails responsive to Turner's request (*Id.*).

Defendant's eDiscovery team searched the former email accounts of Mr. McClanahan and Mr. Blume-Weaver using the terms "Griffith Cave," "Griffith," and "Gate" with a temporal scope of January 1, 2013 through December 31, 2015 (*Id.*). SNF conducted an additional search of Mr. McClanahan's files around November 2016 and Mr. Blume-Weaver's files around August 2017. (*Id.*) And Mr. Lechner declares Defendant searched all locations likely to contain responsive records and provided Turner with all located responsive records without redactions (*Id.*)

Defendant also attached to its motion in opposition an exhibit entitled "Second Declaration of Matthew Lechner" (Doc. 38, Ex. 2). In that declaration, Mr. Lechner states Defendant intended its second search, as described in the revised declaration, to supersede Defendant's initial search that returned no records (*Id.*). Mr. Lechner declares he identified the SNF staff who could potentially have responsive records in their possession and directed them to conduct searches (*Id.*). He required those staff members to report to him how they conducted their searches and provide him with any records they located (*Id.*).

Turner now moves the Court to strike both of Mr. Lechner's declarations for failing to comply with Federal Rule of Civil Procedure 56 (Docs. 47, 48). When ruling on a motion for summary judgment, the Court will only consider affidavits and declarations that comport with the formal requirements of Rule 56: they must (1) be made on personal knowledge of the affiant or declarant; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated. Affidavits, declarations, and supporting exhibits that fail to satisfy Rule 56 are subject to a motion to strike. *Adusumulli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998).

In FOIA cases, courts often find a declarant satisfies Rule 56 if (s)he supervised the agency's FOIA search. *Patterson v. I.R.S.*, 56 F.3d 832, 840-41 (7th Cir. 1995). The declarant may describe the agency's search despite not personally conducting the search. *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Declarations from each individual who actually participated in the search are unnecessary. *Id.*

Turner contends Mr. Lechner's declarations do not satisfy Rule 56 because Mr. Lechner was too far removed from the individual searches. Turner points out that the SNF staff members used varied search terms, which suggests they chose how to conduct their own queries. But Turner does not cite any authority suggesting Mr. Lechner lacked the requisite level of supervision over Defendant's search to satisfy Rule 56. Courts generally require, at most, that a FOIA declarant be knowledgeable about the procedures the agency used in handling the request and familiar with the documents in question. *Spannaus v. U.S. Dept. of Justice*, 813 F.2d 1285, 1289 (4th Cir. 1987); *see Russell v. U.S. Dept. of State*, 651 F.App'x 667, 668 (9th Cir. 2016) (only requiring that the declarant was "responsible for supervising the search"). In *Patterson v. I.R.S.*, the Seventh Circuit even accepted an affidavit

from an I.R.S. employee who attested to a search that took place before he came into his position. 56 F.3d 382, 840-42 (7th Cir. 1995). The affiant relied on his predecessor's records of the search, which were transcribed in a standard agency form. *Id.*

Here, Mr. Lechner was SNF's FOIA coordinator at the time of the search. He declares he identified the SNF staff who could potentially have responsive records and directed them to conduct searches. He required those individuals to report to him how they carried out their searches and provide him with any records they found. Mr. Lechner's declarations describe, with specificity, the employees who participated in the search, the dates of the search, the places searched, the terms used in the electronic search, and the responsive records identified in the search. Mr. Lechner has demonstrated he was familiar with the search and the records identified from it. His declarations easily satisfy Rule 56.

Turner also argues the Court should strike Mr. Lechner's second declaration because Defendant never expressly offered it in support of its motion for summary judgment. Rather, Defendant attached the second declaration as an exhibit to its motion in opposition to Turner's motion to strike. Turner advances this argument under a rule that does not exist. Neither Rule 56 nor this Court's local rules preclude the Court from considering Defendant's second declaration for this reason.

Finally, Turner argues Mr. Lechner's declarations do not contain enough detail to support a motion for summary judgment. This is not a proper basis to strike an affidavit under Rule 56. This argument is more appropriately addressed when the Court assesses the merits of Defendant's motion.

For these reasons, Turner's motion to strike Mr. Lechner's declarations is denied.

B. **Plaintiff's Affidavit**

Defendant moves the Court to strike several portions of an affidavit Turner offers in support of his motion for summary judgment (Doc. 46).[7] Defendant asserts the affidavit contravenes Rule 56 because some averments are not based on Turner's personal knowledge and/or would be inadmissible under the Federal Rules of Evidence.

Defendant argues the Court should strike Paragraph 14[8] of Turner's affidavit, along with a supporting exhibit. Paragraph 14 states, "I was aware that the Shawnee had expressed a past interest in preventing the release through FOIA of records relating to caves that had not been designated as significant under the Federal Cave Protection Act of 1988" (Doc. 34, Ex. 2). As evidence of this proposition, Turner produces copies of minutes from an Illinois Speleological Survey ("ISS") meeting that took place in 2003 (Doc. 34, Ex. 10). According to the minutes, two individuals at the meeting described a conversation they had with SNF employee Steve Widowski (*Id.*). During that conversation, Mr. Widowski apparently stated it was important for "[the] Forest Service not to hold data, especially for caves not designated as significant because of potential Freedom of Information Act (FOIA) requests" (*Id.*). Turner summarizes the meeting minutes in Paragraph 15 of his affidavit (Doc. 34, Ex. 2).

The Court cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Hearsay is an out of court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801. Turner attempts to introduce the ISS minutes to support his affidavit, but the minutes

---

[7] Defendant did not file a separate motion to strike, but instead included its arguments to strike portions of Turner's affidavit in its response to Turner's motion for summary judgment.
[8] Defendant moves the Court to strike Paragraph 13 of Turner's affidavit. However, based on Defendant's argument, the Court believes Defendant actually intended to reference Paragraph 14.

contain multiple instances of hearsay: the conversation involving Steve Widowski; the recollection of that conversation at the meeting; and the minutes, themselves, that memorialize the meeting. Each one of these statements must independently meet an exception to the hearsay rule in order for the minutes to be admissible. FED. R. EVID. 805. None of them do. The Court thus grants Defendant's motion to strike Doc. 34, Exhibit 10 as inadmissible hearsay and Paragraph 14 of Turner's affidavit for lacking personal knowledge (Doc. 34, Ex. 2, ¶ 14 ). Although Defendant does not move the Court to strike Paragraph 15 of Turner's affidavit, the Court also strikes Paragraph 15 as inadmissible hearsay (Doc. 34, Ex. 2, ¶15).

Defendant next argues the Court should strike Paragraphs 56 and 57 of Turner's affidavit for lacking foundation and not being based on Turner's personal knowledge. In Paragraphs 56 and 57, Turner attests he attempted to recreate Defendant's search methods and could not replicate the same results (Doc. 34, Ex. 2).

To satisfy Rule 56's personal knowledge requirement, an affiant's statements must be based on reasonable inferences that are "grounded in observation or other first-hand personal experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). Turner's statements in Paragraphs 56 and 57 describe his firsthand experience at attempting to mimic Defendant's search. None of his assertions are based on "flights of fancy, speculations, hunches, intuitions, or rumors. . ." *Id.* Because Turner clearly has personal knowledge of the searches he conducted, Defendant's lack of foundation argument is unconvincing. *See* FED. R. EVID. 602. Defendant's motion to strike Paragraphs 56 and 57 is denied.

Defendant also moves the Court to strike Paragraphs 58 through 60 of the affidavit for lacking foundation and not being based on Turner's personal knowledge. In Paragraphs

58 through 60, Turner makes several arguments based on metadata from documents Defendant released to him in response to his FOIA request (Doc. 34, Ex. 2). Turner sets forth supposed screenshots of the metadata to bolster his assertions (Doc. 34, Exs. 31-38).

The proponent of evidence must establish a foundation for its admission by authenticating that the evidence is what the proponent claims. FED. R. EVID. 901. Turner states in his affidavit that the screenshots are "representative sample[s]" of the metadata but does not identify how he obtained the pictures, who took the pictures, or set forth any evidence verifying the screenshots are what they purport to be (Doc. 34, Ex. 2, p. 15). Paragraphs 58 through 60 therefore lack a foundation. Defendant's motion to strike Paragraphs 58 through 60 is granted. Although Defendant does not ask the Court to strike Doc. 34, Exhibits 31, 32, 33, 34, 35, 36, 37, and 38, the Court strikes them for lacking foundation.

In sum, the Court grants Defendant's motion to strike Paragraphs 14, 58, 59, and 60 of Turner's affidavit, along with Doc. 34, Exhibit 10. The Court also strikes Paragraph 15 and Doc. 34, Exhibits 31, 32, 33, 34, 35, 36, 37, and 38. The Court denies Defendant's motion to strike Paragraphs 56 and 57.

### C. Adequacy of Defendant's Search

Defendant argues it is entitled to summary judgment because Mr. Lechner's declarations establish the agency's search was adequate as a matter of law. Turner, on the other hand, argues Defendant's search was *inadequate* as a matter of law.

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Citizens for Responsibility & Ethics in Washington v. U.S. Dept. of Veterans Affairs*, 828 F.Supp.2d 325, 329-30 (D.D.C. 2011). For an agency to prevail on summary judgment, it

"must show that there is no genuine issue of material fact about the adequacy of its records search." *Rubman v. U.S. Citizenship & Immigration Services*, 800 F.3d 381, 387 (7th Cir. 2015). An agency's search was adequate if the agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* Good faith is presumed. *Id.*

An agency may rely solely on "reasonably detailed and nonconclusory affidavits" to support its claims of compliance with the FOIA. *Becker v. I.R.S.*, 34 F.3d 398, 406 (7th Cir. 1994) (quoting *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) (internal quotations omitted). "In response to an agency affidavit, the FOIA requester can present countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387. "[I]f a review of the record raises substantial doubt about the adequacy of the search, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment in favor of the agency is inappropriate." *Id.* (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal quotations and alterations omitted)).

Turner contends Mr. Lechner's declarations contain insufficient detail to support a finding of summary judgment in Defendant's favor. "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Mr. Lechner's declarations specify the terms, dates, and locations relevant to

Defendant's search, as well as the individuals who participated in the search and the records the agency found. Mr. Lechner also avers that Defendant searched all locations likely to hold responsive records. These details are sufficient for the Court, and Turner alike, to assess the adequacy of Defendant's search.

Turner also advances a multitude of arguments to impugn the good faith and reasonableness of Defendant's search efforts. He suggests Mr. Cain purposely misstated, "[N]o records were found because the Shawnee National Forest was not party to the planning for gating of Griffith Cave" (Doc. 20, Ex.4). Although Mr. Cain's statement was inaccurate, there is no evidence Mr. Cain tried to intentionally mislead Turner. Turner's assertion is entirely speculative and does not constitute "tangible evidence" needed to rebut the presumption of agency good faith. *Silets v. U.S. Dept. of Justice*, 945 F.2d 227, 231 (7th Cir. 1991). Additionally, after Mr. Cain's response, Defendant conducted another search and released responsive records to Turner. "[I]t is the agency's actions to rectify the failings of the initial search that demonstrate an adequate search was performed." *Stevens v. U.S. Dept. of Homeland Security*, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (citing *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Defendant's continuing discovery and release of records actually indicates good faith. *Landmark Legal Foundation v. E.P.A.*, 272 F.Supp.2d 59, 63 (D.D.C. July 24, 2003).

Turner further argues Defendant utilized inadequate search terms in its electronic queries and unreasonably failed to search certain locations. The adequacy of a search turns on the "reasonableness of the effort in light of the *specific* request." *Larson v. U.S. Dept. of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (international quotations and citations omitted) (emphasis added). Turner's FOIA request states:

> I am requesting all records pertaining to the gating of Griffith Cave, as well as any alternatives that may have been suggested. I am unaware of the full extent of Forest Service records that may pertain to my request; but, I would expect for agency documents to include discussion on cave access, followup studies, site selection, bat counts, and provision of the National Environmental Policy Act. Such records would likely extend to communications between the Fish and Wildlife Service, Stantec Environment Consulting, Locke Lord, the Illinois Department of Natural Resources, Eon/Pioneer Trial Wind Farm, and Mr. and Mrs. Conkle. Since Griffith Cave is located in Hardin County, Illinois, I would expect for responsive records to be held primarily by officials in Forest Service Region 9. Hardin County, Illinois is located within the purchase boundary of the Shawnee National Forest. Mr. McClanahan works for the Shawnee National Forest as an endangered species biologist. I know that unpublished bat count records collected by Mr. McClanahan and Joe Kath (Illinois Department of Natural Resources) were used to select Griffith Cave for gating. I am aware that an agreement to gate the cave was signed in November of 2013. However, exact specifics relating to followup studies, access, and other matters may have been decided at a later date. I have attached a copy of the cave gating agreement.

(Doc. 20, Ex. 1).

According to Mr. Lechner's declarations, Defendant used electronic search terms of "Griffith Cave," "Griffith," "Cave," "Cave Gating," "Bat Gates," "Cave Closure," "Gating of Griffith Cave," and "Gate." Given the language of Turner's FOIA request, *i.e.*, "gating of Griffith Cave," Defendant's search terms were not unreasonable. Moreover, Defendant searched through the records of nine SNF employees, which is consistent with Turner's expectation for "responsive records to be held primarily by officials in Forest Service Region 9" (*Id.*).[9]

Turner, however, argues Defendant released documents to him in November 2016 that contain "clear leads" Defendant should have followed to find records of mitigation projects proposed as alternatives to the gating of Griffith Cave. Specifically, emails from Mr.

---

[9] SNF is located in Forest Service Region 9. *Eastern Region Location Map*, USDA FOREST SERVICE, https://www.fs.usda.gov/detailfull/r9/home/?cid=stelprd3799515&width=full.

McClanahan's records discuss the purchase of Toothless Cave and the mine stabilization and gating of Unimin Minerals hibernacula (Doc. Doc. 34, Exs. 16 & 19). Turner posits Defendant should have conducted additional searches using terms like "Mitigation," "Unimin," and "Toothless" based on Mr. McClanahan's emails. Turner also makes a vague assertion that Defendant should have searched through "emails, voice messages, and text messages" to locate more records (Doc. 34, p. 10).

Courts have held that an agency "is not required to speculate about potential leads" or "obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dept. of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). Exceptions arise when a search uncovers "clear and certain" leads "that raise red flags pointing to the probable existence of responsive agency records. . ." *Whitaker v. C.I.A.*, 31 F.Supp.3d 23, 43 (D.D.C. Mar. 10, 2014).

In an email exchange with Mr. Blume-Weaver, Mr. McClanahan states he received emails from a consulting company discussing Toothless Cave (Doc. 34, Ex. 18). Mr. McClanahan wrote that he intended to follow-up via phone with the consulting company and would send Mr. Blume-Weaver a summary of that conversation (*Id.*). Because Mr. McClanahan's emails confirm additional records exist and point to their precise location, Defendant could not turn a blind eye to those leads in good faith. But Defendant's search already accounted for those records (Doc. 34, Exs. 18 & 20). There are no other clear and certain leads Defendant should have followed. The Seventh Circuit has stressed "the importance of finality in the FOIA search process," *Rubman*, 800 F.3d at 391, and requiring an agency to pursue every possible lead would "reduce government agencies to full-time investigators on behalf of requesters," *Research Center, Inc. v. C.I.A.*, 720 F.Supp.217, 219

(D.D.C. Sept. 11, 1989). This is not the FOIA's intention. *Id.* Moreover, Defendant's search turned up several records related to Unimin Mine and Toothless Cave (Doc. 34, Exs. 19, 20, 22). Any possible leads Turner has identified therefrom are proper subjects of a second FOIA request. *Whitaker*, 31 F.Supp.3d at 43.

Turner also casts suspicion on Defendant's search because Defendant cooperated with the "IDNR, the USFWS, and a private wind energy company" for two years to construct the Griffith Cave gate but, "except for a 22 day period, no records relating to any of the cooperative work has been provided and no explanation has been provided to show why not" (Doc. 34, p. 10). Turner further states that he "has no way of knowing and Defendant has presented nothing to show that all documents located were actually disclosed. Turner is unsatisfied with the documents produced under the circumstances of this case" (*Id.* at 11).

Turner's arguments are misguided. The adequacy of a FOIA search turns on the appropriateness of the methods used to conduct the search and not the actual results. *Muckrock, LLC v. C.I.A.*, 300 F.Supp.3d 108, 119 (D.D.C. Feb. 28, 2018). "[A]n agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004). Thus, without any supporting evidence, it is immaterial that Turner is unsatisfied with the search results or believes additional documents may exist.

Turner also suggests Mr. Lechner inaccurately described Defendant's search methods. Turner attests he attempted to recreate Defendant's search, using the methods and terms described in Mr. Lechner's declarations, and was unable to replicate the same

results. Turner's argument is frail. He conducted his search on computers Defendant did not utilize itself. Moreover, Turner does not purport to know what kind of technology Defendant's staff members used to conduct their searches or to store their electronic files. There is no indication Turner's own search should be identical to Defendant's search, given the many possible variables between the two. This argument fails as well.

Finally, Turner argues Defendant's search was inadequate and in bad faith because it was untimely. An agency's tardy response to a FOIA request is actionable only to the extent that "the requester seeks the court's assistance in ordering the agency to complete its response or the requester claims that the agency has a pattern and practice of unreasonable delay in responding to FOIA requests." *McAtee v. U.S. Dept. of Homeland Security*, 2016 WL 3079693, at *2 (D. Mont., May 31, 2016) (citing 5 U.S.C. § 552(a)(4)(B). District courts otherwise have no authority "to make advisory findings of legal significance on the character of the agency conduct vis-à-vis any requester of information." *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982). Thus, "[h]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform." *Walsh v. U.S. Dept. of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) (citing *Id.*).

Turner has not alleged Defendant engaged in a pattern or practice of delay, and the record shows Defendant released all located responsive records. Accordingly, even though Defendant's response was belated, Turner's arguments as to the timeliness and adequacy of Defendant's initial search efforts are moot.

## CONCLUSION

Overall, Turner has failed to establish Defendant's search was inadequate as a matter of law. Defendant, on the other hand, has met its burden and exhibited there is no genuine dispute as to any material fact that it conducted an adequate search in response to Turner's FOIA request. Plaintiff's Motion for Summary Judgment (Doc. 35) is **DENIED**. Plaintiff's request for leave to conduct discovery (Doc. 35) is also **DENIED**. Defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED**.

And, for the reasons set forth above, Turner's motion to strike Mr. Lechner's declarations (Doc. 47, 48) is **DENIED;** Defendant's motion to strike Paragraphs 56 and 57 is likewise **DENIED.** Defendant's motion to strike Paragraphs 14, 58, 59, and 60 of Turner's affidavit, along with Doc. 34, Exhibit 10, is **GRANTED**, and Paragraph 15 and Doc. 34, Exhibits 31, 32, 33, 34, 35, 36, 37, and 38, are **STRICKEN**.

This entire action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 24, 2018**

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**